MONTGOMERY BANK AND TRUST COMPANY, Appellant, Respondent, *v.* RICHARD W. JONES, JR., and Others, Respondents, Appellants Impleaded with HERBERT T. JENNINGS, Defendant.

First Department, March 8, 1918.

**Pledge — sale by pledgee of notes deposited as collateral security — bad faith — evidence.**

In an action to recover from the defendants, as makers and indorsers of promissory notes accompanied by a collateral agreement pledging other notes of the value of $20,000 as collateral security, and giving the plaintiffs fullest powers to sell at public or private sale without advertising or notice, and also authorizing them to "purchase  *  *  *  said securities discharged from any right of redemption or liability of conversion," it appeared that after the notes in suit became due and unpaid they were

duly protested and thereafter the plaintiffs, pursuant to the collateral agreement, caused the collateral notes which were long past due and had been protested for non-payment, to be sold at public sale after notice to the defendants, and that they were bought in by a person on behalf of the plaintiffs for $300.

*Held,* that a finding by the jury that the sale was not conducted in good faith was contrary to the evidence, and that the plaintiffs were well within their rights in making the sale as they did, although the public was not informed as to the financial standing of the makers and indorsers upon the collateral notes.

CROSS-APPEALS · by the plaintiff, Montgomery Bank and Trust Company, and by the defendants, Richard W. Jones, Jr., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of June, 1915, upon the verdict of a jury, and also from an order dated the 29th day of April, 1915, as resettled by an order entered in said clerk's office on the 11th day of May, 1915, denying the motion of both parties for a new trial made upon the minutes.

*James S. Johnson* of counsel [*Erskine B. Essig* with him on the brief], for the appellant, respondent.

*Charles A. Winter* of counsel [*William C. Dodge* with him on the brief; *Rockwood & Haldane,* attorneys]; for the respondents, appellants.

DAVIS, J.:

The plaintiff recovered a judgment for $1,139.70. Both parties are dissatisfied and these are cross-appeals.

The plaintiff in the present action is an Alabama bank. There are two other actions by two other Alabama banks against the same defendants. The pleadings are identical, and each action is brought on two notes of $2,500 each, aggregating $15,000. These notes were secured by the same collateral, deposited under a collateral agreement, and held for the benefit of this plaintiff and the other banks. The disposition of the other cases depends upon the result of the appeals in this case. The defendant Jennings was not served.

The complaint sets forth four causes of action. The first and third are to recover from the defendants as makers and indorsers of the promissory note for $2,500. The second

and fourth causes of action are to recover the reasonable attorneys' fees and cost of collection, provided for in each note, if unpaid at maturity.   The answer sets up as a defense to the first and third causes of action the giving of collateral security of a market value of $20,000 and that the plaintiff before the beginning of this action had realized upon that collateral security $10,000.   The answer also sets up two counterclaims, alleging the giving of the collateral security of a market value of $20,000 and that the plaintiff disposed of it and converted it to its own use.   A second counterclaim is pleaded alleging the giving of the collateral, the sale of it at public sale, that the plaintiff purchased it and thereafter collected more than enough to pay the notes set out in the complaint, to wit, the sum of $15,000.   At the close of the case the court dismissed these counterclaims, when it realized that the evidence showed no conversion of the collateral and that the court had decided to allow the jury to determine whether the sale of the collateral in Alabama was a sale in good faith and binding upon the defendants.

In detail, the facts are somewhat as follows: The defendants Jones and Stallo were directors of the Manhattan Securities Company, which later was placed in the hands of a receiver. This company being in need of money, the defendants borrowed money on their own paper, secured by collateral which the company held in its treasury.   These notes matured and were renewed several times.   The last time the notes were renewed, the interest was not paid on the old notes, and a note was given for the interest.   At the last renewal the defendants made six identical promissory notes.   The present actions are brought on these notes.   The notes were negotiated with banks in Alabama, one of them being the plaintiff. Each note was for $2,500 and was dated November 22, 1910, payable March 22, 1911.   Each note was dated and made payable at Montgomery, Ala., where the rate of interest is eight per cent.   By the terms of the note the makers agreed to pay a reasonable attorney's fee and all costs of collection if the note was unpaid at maturity, and the said note is made, by its terms, with reference to the Constitution and laws of Alabama.   A collateral agreement accompanied these notes, by the terms of which agreement defendants deposited as

collateral for the payment of the other notes three notes of M. P. Bagg, aggregating $10,000, one note of $5,000 made by W. D. Stratton, and two notes of the Manhattan Securities Company for $5,000. The Bagg notes were dated December 5, 1910, payable in ninety days. The Stratton note was dated October 11, 1910, payable July 1, 1911, and the Manhattan Securities Company's notes were dated July 16, 1910, payable July 16, 1911.

The collateral agreement is signed by the defendants, and in it the notes of Bagg, Stratton and the Manhattan Securities Company are pledged as collateral security for the notes in suit. This agreement has a caption as follows: " The State of Alabama, Montgomery County, ss." By its terms, the notes are deposited with the plaintiff, as trustee, to secure all of the six notes which are the subject of the three actions involved here. By its terms, also, they are deposited to secure any other l ability of the defendants to the owner of the note, with fullest powers to sell, at public or private sale, without advertising or notice, with authority for the owner or holders of the notes to " purchase  *  *  *  said securities discharged from any right of redemption or liability of conversion."

Two of the notes in question were held by the Bank of Luverne, Ala., two by the Butler County Bank, Alabama, and the other two by the plaintiff. On March 22, 1911, the notes in suit became due and were not paid. They were protested and notice of protest was sent to the defendants, and no payment was made on account of these notes. However, the plaintiff did receive some money from defendant Jones. It appears that Jones obtained the discount of a $2,500 note and paid over the proceeds, $2,350, to the plaintiff. One thousand one hundred and twenty-one dollars and sixteen cents of this amount was used to pay off the note which had been given for interest, and the balance was divided among the three banks which held the other notes as payments on account of the principal notes. The notes became due on March 22, 1911. Nothing further was paid on account of the notes, and on July 15, 1912, they were sold at public auction in the court square of the city of Montgomery, Ala. Notice of the time and place of sale was published in the Montgomery

*Times* on July 2, 1912. This newspaper was one of general circulation in that city. This publication was thus thirteen days before the sale took place. In the meantime, notification of the coming sale was mailed to each of the defendants, with a copy of the notice in the paper, and sent by registered mail. The letter to the defendant Stallo was returned unopened. The letters to the defendants Jones and Mallory were not returned, and the evidence shows that they probably received the notices. Under the collateral agreement, it was not necessary to serve these notices, and the trial justice took that view, stating that the plaintiffs could have sold without any notice. In fact, under the agreement, the plaintiffs could have sold the collateral without any demand or advertisement and without notice, and even at private sale. The collateral brought $300 at the sale, and was bought in by a person on behalf of the banks. He thereafter held the collateral as trustee for the six owners, the banks. At the time of the sale all of these collateral securities were past due.

On October 14, 1912, Bagg paid something more than $8,500 of his notes, and the indorser on the $2,000 Manhattan Securities Company note paid $500 on account of that note and the balance about nine months later. The indorser on the $3,000 Manhattan Securities Company note paid, between October 26, 1912, down to the date of the trial, April 29, 1915, $1,111 on account of the principal and interest on that note. In this action the defendants claim that they are entitled to have credited to them on their notes the amount of these payments on the collateral notes, on the ground that the sale of the collateral was not a *bona fide* sale, but was fraudulent as to them. On the other hand, the plaintiffs claim that the sale was made in strict accordance with the terms of the collateral agreement, and that the payments made on account of the collateral notes belong to the purchaser at the sale, to wit, the trustee for the banks. The court submitted this question to the jury and left it to them to determine whether the sale was in good faith, and the jury found that it was not in good faith and that the defendants were entitled to be credited with the payments made after the sale on account of the collateral notes. The defendants claim that the evidence

of bad faith is found in the fact that, before the sale, the public was not informed as to the financial standing of the makers and indorsers upon these collateral notes, that the notes were not sold in the best market, and that the price obtained for them, about $300, was so inadequate as of itself to indicate bad faith.

On the other hand, the plaintiffs urge that there was no reason to expect that the makers of the notes would ever pay them, inasmuch as they were all long past due and had been protested for non-payment, and that, under the circumstances, it would not have insured a greater price at the sale, even if the financial standing of the makers and indorsers had been advertised. Furthermore, they claim that the fact, that the notes were protested is some proof that their financial standing was not good, and, at any rate, they, the plaintiffs, had no assurance that their financial standing was good, at least not enough to warrant them in making any public representations on that subject, and furthermore, they contend that, in making this sale, they not only complied implicitly with the terms of the collateral agreement, but did more, in that they gave ample notice to the defendants that they purposed to make the sale in the public market of Montgomery, Ala., on the date mentioned.

The court left to the jury this question of good faith, and the jury found that the sale was not conducted in good faith, and allowed the defendants to credit on their obligation all the sums received by the plaintiffs in payment of these collateral notes. It seems to me that the evidence of bad faith was insufficient, if not lacking altogether, and that the plaintiffs were well within their rights, secured to them by the collateral agreement, in making the sale as they did. By reference to the notes which were sold, we find that the last note to fall due became due on July 1, 1911, a year and fifteen days before the sale. It was all dishonored paper, and protested, and nothing could be realized on the notes, and the maker of two of the notes, the Manhattan Securities Company, was in the hands of receivers. The Stratton note for $5,000 had been dishonored for more than a year and nothing was ever realized on it.

I think the finding of the jury that the sale was conducted in bad faith on the part of the plaintiffs was contrary to the evidence in the case, and for that reason there should be a reversal of this judgment. On March 27, 1911, the banks received $2,350 on account of the Bagg notes. The court charged the jury that in any event this amount must be credited against these notes, and that in no event could their verdict be for more than the difference between $2,350 and $15,000. At the time this payment was made, defendants owed the banks the principal notes, $15,000, plus $1,121.16, the amount of the interest note. When the banks received the $2,350, they credited $1,121.16 thereof on the interest note and surrendered that note. The remainder was credited on the other notes, held by the three banks, each bank reducing its claim by about $409.61. Credit was also given for the full $2,350 on the Bagg collateral note. I think the court erred in this part of its charge, in that, on the facts, the defendants thus receive a credit for $1,121.16 twice. They got a credit when the interest note was delivered up to them, and they got another credit under the charge of the court. The defendants get a credit twice; first, by the surrender of the interest note, and again by the charge of the court in giving defendants full credit for $2,350.

The finding of the jury that the sale of the collateral in question was not made in good faith is reversed, and the judgment in favor of the plaintiff is modified by increasing the recovery to the amount as claimed in the complaint to be due on account of the principal of the notes, together with six per cent interest on said amounts from the date of maturity of each note. The judgment should also provide for the payment of $500 attorney's fee as found by the jury. As thus modified the judgment and order are affirmed, with costs to the plaintiff, appellant, in both courts.

CLARKE, P. J., SCOTT, DOWLING and PAGE, JJ., concurred.

Judgment modified as stated in opinion, and as modified, judgment and order affirmed, with costs to plaintiff, appellant. Order to be settled on notice.