GENERAL PHOENIX CORPORATION, Appellant, *v.* JOHN B. CABOT, Respondent.

Argued October 10, 1949; decided December 2, 1949.

*John R. Bartels* and *Marvin F. Hartung* for appellant. I. Respondent's agreement presents no issue of fact and is an absolute guaranty of payment. (*Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125; *Morris* v. *Wadsworth,* 11 Wend. 100; *Vetter* v. *Welz & Zerweck,* 143 App. Div. 121; *Dolgoff* v. *Schnitzer,* 209 App. Div. 511; *Kramer* v. *Relgov Realty Co.,* 243 App. Div. 98, 268 N. Y. 592; *First Nat. Bank* v. *Jones,* 219 N. Y. 312; *Matter of Redding,* 177 Misc. 987.) II. The public sale of collateral securities was lawfully held and presents no issue of fact. (*Toplitz* v. *Bauer,* 161 N. Y. 325; *Cole* v. *Manufacturers Trust Co.,* 164 Misc. 741; *Montgomery Bank & Trust Co.* v. *Jones,* 182 App. Div. 252; *Matter of Kiamie,* 191 Misc. 179; *Franklin Nat. Bank* v. *Newcombe,* 1 App. Div. 294; *Hiscock* v. *Varick Bank of N. Y.,* 206 U. S. 28; *Farmers Nat. Bank of Annapolis* v. *Venner,* 192 Mass. 531; *Jones* v. *Costlow,* 349 Pa. 136; *Bush* v. *Adams,* 165 F. 802; *Southern Exch. Bank* v. *Langston,* 33 Ga. App. 477; *Central Nat. Bank of Oakland* v. *Peck,* 15 Cal. App. 2d 512.) III. No issue of fact is raised concerning the proper amount credited respondent. Even were such an issue raised it could be determined by an assessment of damages under subdivision 4 of rule 113. (*Lewis* v. *Chase Nat. Bank,* 189 Misc. 190; *Dolgoff* v. *Schnitzer,* 209 App. Div. 511; *Dodwell & Co.* v. *Silverman,* 234 App. Div. 362; *Waxman* v. *Williamson,* 256 N. Y. 117; *379 Madison Ave., Inc.,* v. *Stuyvesant Co.,* 242 App. Div. 567, 268 N. Y. 576; *Livingston* v. *Blumenthal,* 248 App. Div. 138.)

*Henry A. Stickney* for respondent. I. The issues raised by defendant with respect to the acquisition by plaintiff of defend-

ant's collateral at the alleged " sale " cannot be disposed of on the motion for summary judgment. (*Gillet* v. *Bank of America,* 160 N. Y. 549; *Toplitz* v. *Bauer,* 161 N. Y. 325; *Morris* v. *Windsor Trust Co.,* 213 N. Y. 27; *State Trust & Sav. Bank* v. *Dunn,* 24 F. 2d 477, 278 U. S. 582; *Dibert* v. *Wernicke,* 214 F. 673; *Montague* v. *Dawes,* 96 Mass. 369; *Dibert* v. *D'Arcy,* 248 Mo. 617; *Clapp* v. *Associated Depositors,* 33 F. Supp. 686; *Manning* v. *Heidelbach,* 153 App. Div. 790; *Coleman* v. *Solomon,* 225 Ala. 407; *Winchester Rock & Brick Co.* v. *Murdough,* 233 Mass. 50; *Cole* v. *Manufacturers Trust Co.,* 164 Misc. 741.) II. The instrument sued upon does not permit the present action against defendant. (*Gillet* v. *Bank of America,* 160 N. Y. 549; *Continental Bank & Trust Co.* v. *Chemical Bank & Trust Co.,* 51 N. Y. S. 2d 903; *Dyner* v. *Collins,* 41 N. Y. S. 2d 88; *Assets Realization Co.* v. *Roth,* 226 N. Y. 370; *Brown* v. *Mechanics & Traders' Bank,* 43 App. Div. 173; *Westville Land Co.* v. *Handle,* 112 N. J. L. 447; *National Bank of Newburgh* v. *Bigler,* 83 N. Y. 51.) III. Since the instrument purports to impose an independent obligation upon defendant, he may avail himself of the defense of usury. (*Schwartz* v. *Fifty Greenwich St. Realty Corp.,* 265 N. Y. 443; *Astra Pictures* v. *Schapiro,* 182 Misc. 19.) IV. The present motion should not be decided in plaintiff's favor since there are at issue questions of fact which can be decided only upon a trial of the action. (*Matter of Campbell,* 176 Misc. 543.)

BROMLEY, J. Summary judgment was denied plaintiff on its claim under a contract of guaranty because it was thought that questions of fact were present relating to the effect of the guaranty agreement and the sale of collateral pledged thereunder. The Appellate Division affirmed the denial (two Justices dissenting) but allowed an appeal on certified questions which present for our review the claimed issues of fact. We hold the denial of summary judgment to be improper.

In March, 1947, defendant Cabot, the president, director and sole stockholder of a corporation known as Pluto Corporation, executed an instrument guaranteeing the payment of certain loans to be made to the corporation by plaintiff, General Phoenix Corporation. Collateral, consisting of stock in Pluto and another corporation also controlled by defendant, was pledged as security for the guaranty agreement. The loans, aggregating over $150,000 and represented by three promissory notes and an

open account, were not paid at maturity. General Phoenix sought recovery under the guaranty agreement executed by Cabot, first by sale of the collateral security and then by this action on the agreement. Cabot claimed the action was premature since all remedies had not been exhausted against the debtor; he also counterclaimed for return of the collateral on the ground that the securities had been deposited pursuant to a usurious agreement and that the sale was void because the securities had been purchased by the pledgee. General Phoenix filed a motion for an order striking the amended answer and dismissing the counterclaims and affirmative defenses, which was denied.

Whether summary judgment should have been granted depends on (1) whether the surety agreement on its face may be interpreted as a guaranty of payment so that defendant's liability accrued immediately upon default of the principal obligor; (2) whether the sale of the pledged stock was properly held, and (3) whether defendant may plead the defense of usury.

1. The interpretation of a contract of suretyship is governed by the standards which govern the interpretation of contracts in general (Restatement, Security, § 88). Whether a surety is a guarantor of payment or a guarantor of collection depends upon the intention of the parties as expressed in the surety contract. If he binds himself to pay immediately upon default of the debtor, he becomes a guarantor of payment; if he binds himself to pay only after all attempts to obtain payment from the debtor have failed, he becomes a guarantor of collection (1 Brandt, The Law of Suretyship and Guaranty, pp. 241–249). Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and parol evidence is not admissible as an aid in interpretation; no trial is necessary to determine the legal effect of the contract (*Hartigan* v. *Casualty Co. of America*, 227 N. Y. 175, 178; *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125, 133). A contract of suretyship does not depend upon the use of technical words but upon a clear intent that one party as surety binds himself to the second party as creditor to pay a debt contracted by a third party, either immediately upon default of the third party or after attempts to effect collection from the third party have failed.

An examination of the surety agreement involved herein compels the conclusion that defendant obligated himself thereunder as a guarantor of payment. The ambiguities which defendant claims inhere in the instrument stem mainly from the use of the word " indemnity " in certain portions of the instrument. Upon a reading of the instrument as a whole, however, the ambiguity claimed by defendant becomes nonexistent. The contract is explicit: John B. Cabot guarantees and warrants " the full and prompt payment at maturity of any part of the principal "; " in case default is made at any time in payment of any of the * * * obligations " he " agrees to pay the same to General, its successors and assigns, upon demand "; he agrees that " the undersigned will upon demand pay and perform the undersigned's obligation under this guaranty and indemnity without requiring any proceeding or action to be taken against the Borrower." As opposed to this clear language there appears in the body of the instrument a reference to the contract as an " indemnity " and the instrument is entitled " BOND OF INDEMNITY ". In view of the clear and unmistakable language indicating that defendant guarantees payment at maturity, the use of the word " indemnity " cannot obscure the intention of the surety or give a different meaning to the instrument. Moreover, a contract of indemnity runs not to the creditor but to a third person who is or will become a debtor upon the imposition of a contingent liability (*Jones* v. *Bacon,* 145 N. Y. 446; *Dolgoff* v. *Schnitzer,* 209 App. Div. 511; 1 Brandt, The Law of Suretyship and Guaranty, pp. 19–20). Cabot's liability under the surety contract attached as soon as there was default by Pluto in the payment of its obligations. An action against such a surety brought before all efforts to collect from the principal obligor have failed is not premature.

2. The guaranty contract authorized sale of the collateral, either at public or private sale, and further permitted the pledgee, General Phoenix, to purchase the stock at a public sale. Upon default by the principal obligor, demand was made upon the surety and notice was given to him that a sale would be held of the collateral pledged under the surety agreement. Notices of the proposed sale were duly published. Upon request of the surety, in writing, the sale was twice adjourned. In the request for adjournment he waived " any and all objections to your

right to hold and conduct such sale in accordance with your Notice * * * provided however that such waiver shall be without prejudice to any rights of the undersigned to question the amounts of the specific items of indebtedness '' and agreed to '' indemnify and hold you harmless with respect to any and all damages, expenses, fees, costs and liabilities of whatsoever description which you may incur by reason of any and all adjournments of the above mentioned sale.''

Where consent is given under the contract, a pledgee may purchase at a public sale of pledged goods (Restatement, Security, § 51; *Toplitz* v. *Bauer*, 161 N. Y. 325). Technically, the notice of sale could no longer effectively constitute public notice after adjournment, and a further notice by publication should have been given before the actual date of sale. However, defendant specifically waived any right to object to the sale on this ground and he cannot now contend the sale was improper because of any irregularity as to publication. Nor may he seek to set aside the sale because of a claim that the price obtained for the securities was grossly inadequate. The sale was regularly conducted by an established auctioneer, at a place where such sales are usually held, and the bid of General Phoenix was the only bona fide bid received. Cabot was represented at the sale and had actual notice of the bid made by the pledgee; he made no objection to the sale, or the sale price, until his answer in the present action. He has not shown sufficient grounds for setting aside the sale. Where the terms of the contract authorize the pledgee to sell and to purchase upon sale, and due notice of the sale is given to the pledgor so that he has an opportunity to protect his interests, a low or inadequate price is not sufficient to establish that lack of good faith or diligence on the part of the pledgee which would warrant setting aside the sale (*Montgomery Bank & Trust Co.* v. *Jones*, 182 App. Div. 252, affd. 230 N. Y. 580; *Jenkins* v. *Smith*, 21 Misc. 750; *Matter of Kiamie*, 191 Misc. 179). Defendant claims that the pledgee's duty of good faith in enforcing his power of sale requires him to bid a fair approximation of the market price where there is no real competition, and that where the pledgee buys pledged chattels for only a nominal amount the sale is subject to attack. (See Restatement, Security, § 49, comment b.) That rule, however, is not the law in this State. The lack of '' any real

competition '' or the purchase for a '' nominal amount '' is not alone sufficient evidence to establish bad faith, and defendant points to no other conduct of the pledgee from which it might be inferred that it acted in bad faith or with that lack of good faith sufficient to nullify the sale.

3. Cabot's liability is secondary, accruing only after default on the part of Pluto, the principal obligor. Since the principal obligor may not plead usury (General Business Law, § 374; *Jenkins* v. *Moyse*, 254 N. Y. 319), the surety is unable to do so; as far as the underlying debt is concerned, he stands in the shoes of his principal and can avail himself of only those defenses available to it (*Salvin* v. *Myles Realty Co.*, 227 N. Y. 51).

Defendant sought to raise an issue of fact as to whether the proceeds of the sale of the collateral security were actually credited on the note. Since the affidavit of plaintiff's treasurer, who was thoroughly qualified to state whether a credit was given on the indebtedness, established that prior to trial credit had been given, no issue of fact remains in connection with crediting the proceeds of the sale except as to the reasonableness of the amounts deducted from the proceeds for expenses of sale and attorney's fees in connection therewith. Under the terms of the contract General Phoenix was entitled to deduct all expenses attendant upon the sale of the stock held as collateral. Whether or not the deductions were reasonable can be determined upon an assessment of damages under subdivision 4 of rule 113 of the Rules of Civil Practice (*International & Ind. Securities Corp.* v. *Jamaica Jewish Center*, 237 App. Div. 738; *379 Madison Ave., Inc.*, v. *Stuyvesant Co.*, 242 App. Div. 567). A full trial of the issue is therefore unnecessary and summary judgment should have been granted.

The orders should be reversed and the case remitted to Special Term with directions to grant plaintiff's motion and to assess damages, with costs to appellant in this court and in the Appellate Division. The certified questions 1(a), 2(a), 3(a), 4, 6 and 7 are answered in the negative and 1(b), 2(b), 3(b), 5(a) and 5(b) answered in the affirmative.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Orders reversed, etc.