**In re Leo T. WILSON and Natalie Wilson, Debtors.**

**Bankruptcy No. 880–00005.**

United States Bankruptcy Court,
E. D. New York.

Feb. 27, 1981.

Lloyd D. Feld, New York City, for debtors.

Goldman, Horowitz & Chernow, Mineola, N. Y., for Continental Bank.

C. ALBERT PARENTE, Bankruptcy Judge.

Continental Bank (hereinafter "creditor") moves for an order dismissing the debtors' Chapter 13 petition, or in the alternative, converting the Chapter 13 case to a Chapter 7 case, pursuant to 11 U.S.C. Section 1307(c). A hearing on said motion was held on September 16, 1980.

The relevant facts are as follows.

The debtors filed a petition in bankruptcy under Chapter 13 on January 3, 1980. A review of the schedules and proofs of claims filed reveals that there is only one secured claim in the sum of $398.95. There are several unsecured claims in the following amounts: State of New York Department of Taxation and Finance—$127,215.72; Continental Bank—$19,961.15; United States Small Business Administration—$200,000.00; others—$11,349.38. The total amount of unsecured claims is $358,526.25.

Leo Wilson (hereinafter "debtor") is the guarantor of a loan in the sum of $200,-000.00 made by the United States Small Business Administration (hereinafter "SBA") to a corporation in which the debtor is the sole shareholder. The corporation defaulted on the repayment of the loan in late 1978. The debtor listed the entire amount of $200,000.00 in his schedules as an unsecured claim, but characterized the claim as contingent.

The issue before the Court is whether the debtors have noncontingent, liquidated, unsecured debts totaling in excess of $100,-000.00, thereby invoking the bar provisions of Section 109(e) of the Bankruptcy Code.

Section 1307(c) of the Code provides in relevant part that "... on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ...." Section 109(e) states that "Only an individual with regular income that owes, on the date of filing of the petition, noncontingent, liquidated unsecured debts of less than

$100,000 . . . may be a debtor under chapter 13 of this title." Failure to qualify within the definitive parameters of Section 109(e) constitutes sufficient cause for the dismissal or conversion of a case pursuant to Section 1307(c). *In re Kelsey*, 6 B.R. 114, 2 C.B.C.2d 1192, 1197 (Bkrtcy., S.D.Tex.1980).

The creditor contends that all of the debtor's claims are noncontingent and liquidated, and that the petition therefore exceeds the monetary limits set forth in Section 109(e). Relative to the loan from the SBA, the debtor alleges that such claim is contingent and unliquidated. Debtor also asserts that the New York State claim is contingent and unliquidated. Thus, the debtor concludes that in point of fact his noncontingent, liquidated, unsecured claims total in the aggregate to the sum of $31,310.53, well within the statutory debt ceiling established by Section 109(e).

■ The mere fact that the debtor characterizes a claim as contingent in his schedules does not make it contingent. The Court has the power to investigate beyond the schedules to determine the contingency of the liability. *In re Prince*, 5 B.R. 432 (Bkrtcy., W.D.N.Y.1980).

The facts disclose that the principal obligor of the loan repaid part of the amount owed prior to the default. Thus, on the date the debtor filed his petition, the unpaid principle, plus interest, totaled $144,741.40. Debtor's contention that the claim is contingent anchors to the concept that the SBA failed to demand payment from the debtor as of the date the petition was filed.

"A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event." *In re All Media Properties & Artlite*, 5 B.R. 126, 2 C.B.C.2d 449 (Bkrtcy., S.D.Tex.1980).

■ Where the surety is a guarantor of payment, the surety contracts to pay the debt immediately upon the default of the principal obligor. A guarantor of collection contracts to pay the debt only after the creditor has secured a judgment against the principal obligor and has been unable to satisfy that judgment. *U. S. v. Houff*, 202 F.Supp. 471 (W.D.Va.1962); *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 89 N.E.2d 238 (N.Y.1949); U.C.C. Section 3–416. "Whether a surety is a guarantor of payment or a guarantor of collection depends upon the intention of the parties as expressed in the surety contract." *Cabot*, 300 N.Y. at 92, 89 N.E.2d 238.

■ The loan agreement in the instant case provides, in relevant part:

In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of Bank, will pay to Bank, the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. *Bank shall not be required, prior to any such demand on, or payment by, the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the Liabilities . . . ."* (emphasis added)

Pursuant to the terms of the loan agreement, the debtor is clearly a guarantor of payment, not of collection. *Houff*, 202 F.Supp. at 475.

■ The principal obligor defaulted on the loan in late 1978, well before the filing of the petition in bankruptcy. No written demand for payment was served on the debtor until September 15, 1980, nine months after the petition was filed. As a guarantor of payment, liability attached to the debtor immediately upon the default of the principal obligor. *Cabot*, 300 N.Y. 87, 89 N.E.2d 238; U.C.C. Section 3–416.

Debtor's contention that liability did not accrue until he received a written demand from the SBA is not supported by case law or by statute. The demand serves solely as a request for payment as opposed to the creation of liability. *See, Long Island Trust Co. v. Dicker*, 480 F.Supp. 656 (N.D. Tex.1979) (Statute of Limitations accrues at the time of default, not at the demand for payment).

The Court concludes that SBA's claim is not contingent, as the "triggering event;" to wit, the default of the principal obligor had occurred prior to the filing of the bankruptcy petition.

Debtor further alleges that SBA's claim is unliquidated by virtue of the fact that the SBA holds the obligor's assets as collateral under the loan agreement. Therefore, since the SBA has the option to apply the collateral in satisfaction of the debt, the actual amount owed by the debtor cannot be determined until the SBA decides whether or not it will exercise its option.

Debtor's interpretation of the SBA loan agreement is not supported by case law.

In the case at bar, the loan agreement provides in relevant part:

Lender shall not be required prior to any such demand on, or payment by, the undersigned . . . to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.

An SBA loan agreement containing the same aforementioned clause was before the District Court for the Western District of Virginia in the matter of *Houff, supra.* In said case, the guarantor argued that the creditor had to apply the assets of the principal obligor against the debt before the extent of the guarantor's liability could be fixed. The District Court rejected the guarantor's contention and held that the combination of a guaranty of payment and a clause in the agreement waiving the creditor's duty to first move against the primary obligor's assets rendered the guarantor liable for the full amount of the debt immediately upon the default of the principal obligor. *Houff, supra.*

As the District Court stated:

. . . the creditor may at his election proceed against either the guarantor or the principal obligor, and he is not required in proceeding on the guaranty to elect whether he will ultimately attempt to recover payment of the principal obligor.

*Houff, supra* at p. 476.

Notwithstanding the fact that the creditor may at some time in the future decide to release the guarantor from some or all of the debt by applying the collateral does not alter the fact that as of the date of the filing, the debtor was liable for the full amount of the claim without regard to the collateral. *Houff, supra.* Therefore, the claim was liquidated as of the date the petition was filed.

Premised on the Court's finding that the SBA claim is noncontingent and liquidated, the debtors have noncontingent, liquidated, unsecured debts in the sum of $176,051.93, well in excess of the statutory limit of $100,000. Therefore, it is unnecessary to consider the claim of the New York State Department of Taxation and Finance.

Based on the foregoing principles of law, the Court concludes that the debtor is ineligible for relief under Chapter 13 of the Bankruptcy Code.

The debtors' petition is hereby dismissed with ten days' leave for the debtors to move to convert the case to Chapter 7.

Settle order.