**CONSOLIDATED RAIL CORPORATION,**
Plaintiff,

v.

**PRIMARY INDUSTRIES
CORPORATION,**
Defendant.

No. 92 Civ. 4927 (WCC).

United States District Court,
S.D. New York.

Oct. 23, 1995.

Clark, Ladner, Fortenbaugh, & Young, Philadelphia, PA, for plaintiff; Paul D. Keenan, Barry N. Gutterman, Gutterman & Associates, New York City, of counsel.

Smith Campbell & Paduano, New York City (Anthony Paduano, of counsel), for defendant.

## OPINION AND ORDER

CONNER, Senior District Judge:

Plaintiff has moved for summary judgment on its claim that defendant owes $1,000,000 to plaintiff pursuant to a written agreement executed and delivered by defendant guaranteeing the payment of bills and charges owed by an affiliate of defendant for transportation services provided by plaintiff. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). For the reasons stated below, plaintiff's motion is granted.

*Background*

The following facts are undisputed by the parties. Primary Industries executed and delivered to Conrail a guarantee agreement, dated March 16, 1978, which secured the payment of bills and charges for transportation and related services that Conrail rendered to Primary Coal up to an amount of $1,000,000. The guarantee, issued and signed by Murray Relis, a director and officer of Primary Industries from 1975 to 1992, reads as follows:

> For value received, including the extension of credit to Primary Coal, Inc. in the

amount of $1,000,000.00 by Consolidated Rail Corporation for transportation and related services, the undersigned hereby guarantees the payment of all bills and charges, for the said services and shall pay the same upon presentation, if accompanied by a written statement that the charges are correct and have not been paid. The obligation of the undersigned pursuant to this guaranty shall not exceed $1,000,000.00 but the extension of credit in excess of this amount shall not affect or impair this guaranty.

This is a continuing guaranty, covering all bills and charges for transportation and related services furnished to or for the said Primary Coal, Inc. at any time after the date hereof until revocation of this guaranty.

This guaranty may be revoked by giving notice of revocation to you when notice of revocation shall be effective upon receipt but shall not affect or impair the liability of the undersigned with respect to any indebtedness within the scope of this guaranty for services furnished prior to the effective date of revocation, whether demand for payment is made hereunder before or after the effective date of revocation.

Notice of acceptance of this guaranty is hereby expressly waived by the undersigned.

PRIMARY INDUSTRIES CORPORATION

/s/ Murray Relis

Authorized Signature

During the final six months of 1991, Primary Coal failed to pay the sum of $5,136,082 in transportation charges due and owing to Conrail for the transportation of coal. In a letter dated January 6, 1992, James D. Morrison, Assistant Treasurer for Conrail, notified Primary Industries in writing of the fact that Primary Coal owed Conrail $5,136,082 for transportation services,[1] and demanded payment of $1,000,000 pursuant to the guarantee:

Marc L. Ginzberg
President
Primary Industries Corporation
666 Fifth Avenue
New York, NY 10019

RE: *Notice of Default and Demand for Guaranty*

Dear Mr. Ginzberg:

Take notice that Primary Coal, Inc., for whom you became guarantor under an agreement in writing dated march 6, 1978, has defaulted in the payment of transportation charges in the sum of $5,136,082.97. These are the correct and lawful charges for transportation services provided to Primary Coal, Inc., and secured by Primary Industries Corporation's agreement of guaranty. They are still unpaid and due and owing to Consolidated Rail Corporation.

Demand is now made for Primary Industries Corporation to pay or cause to be paid to Consolidated Rail Corporation $1,000,000.00 of the total sum due, pursuant to the above-referenced guaranty. Legal proceedings to enforce and recover will be taken against Primary Industries, Inc., if payment is not received before January 21, 1992.

/s/ J.D. Morrison
Assistant Treasurer
Credit & Collections
Consolidated Rail Corporation

Conrail initiated this suit against Primary Industries in March 1992 in the United States District Court for the Eastern District of Pennsylvania to collect the $1,000,000 owed under the guarantee, and initiated a related suit against Primary Coal in May 1992 seeking the full $5,136,082 that it alleged was due on the unpaid transportation charges. These cases were transferred to this court and consolidated for discovery purposes. Primary Coal did not dispute that the shipping charges remained unpaid, but in September 1992 filed a counterclaim arguing that any payment should be offset by damages associated with Conrail's rerouting and delays. This court granted Conrail's motion

---

1. Conrail claimed an unpaid balance of $5,136,082. Primary Coal's books actually indicated it owed Conrail $5,141,535. This discrepancy is insufficient to create an issue of material fact.

for summary judgment on its claim against Primary Coal for $5,136,082 in freight charges, and dismissed Primary Coal's counterclaim, but, because Conrail failed to include its claim against Primary Industries as guarantor in its July 1993 summary judgment motion, denied summary judgment on Conrail's claim against Primary Industries. *See Consol. Rail Corp. v. Primary Indus. Corp.,* 868 F.Supp. 566 (S.D.N.Y.1994). Subsequently, in April 1995, Conrail moved for summary judgment on its claim against Primary Industries as guarantor. At this time, we grant Conrail's motion for summary judgment on its claim for $1,000,000 against Primary Industries under the guarantee of payment.

*Rule 56(c)*

 Summary Judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988). However, "summary judgment is proper when reasonable minds could not differ as to the import of the evidence before the court." *Cable Science Corp.,* 920 F.2d at 151.

*New York Law*

 Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract. *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425 (2d Cir.1992); *Slatt v. Slatt,* 64 N.Y.2d 966, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099,

1100 (1985). If a contract is unambiguous on its face, a court may not turn to extrinsic evidence of the contracting parties' intent. *Seiden Assoc.,* 959 F.2d at 429. Whether a contract term is ambiguous is a question of law. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993); *Seiden Assoc.,* 959 F.2d at 426; *W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990). The construction of a guarantee, under New York law, is governed by the same principles. *See, e.g., Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985); *Chem. Bank v. Sepler,* 60 N.Y.2d 289, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983); *Nat'l Bank of N. Am. v. Paskow,* 53 N.Y.2d 953, 441 N.Y.S.2d 443, 424 N.E.2d 277 (1981); *Gen. Phoenix Corp. v. Cabot,* 300 N.Y. 87, 89 N.E.2d 238 (1949); *Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109 (S.D.N.Y. 1979); *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.,* 833 F.Supp. 948 (E.D.N.Y.1993).

*Discussion*

 In order to recover under the terms of the guarantee, the obligee must establish a *prima facie* case by providing proof of (1) the underlying obligation, (2) the guarantee, and (3) the failure by the guarantor to make payment in accordance with its terms. *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.,* 833 F.Supp. 948, 957 (E.D.N.Y.1993); *Key Bank of Long Island v. Burns,* 162 A.D.2d 501, 556 N.Y.S.2d 829, 830 (1990). *See also Kornfeld v. NRX Technologies, Inc.,* 93 A.D.2d 772, 461 N.Y.S.2d 342 (1983), *aff'd* 62 N.Y.2d 686, 476 N.Y.S.2d 523, 465 N.E.2d 30 (1984). We find that the plaintiff has established a *prima facie* case: (1) Proof of Primary Coal's outstanding and unpaid balance for freight charges incurred in 1991 is uncontroverted, (2) the March 1978 letter unambiguously establishes Primary Industries' promise to guarantee Primary Coal's payment up to $1,000,000, and (3) Primary Industries has not paid Conrail in satisfaction of its obligation as guarantor.

Upon review of the undisputed facts submitted in this case, the court finds that the

March 1978 guarantee agreement unambiguously obligates Primary Industries to pay Conrail $1,000,000 due to the default of Primary Coal. The guarantee agreement provides that Primary Industries "guarantees the payment of all bills and charges, for [transportation and related] services and shall pay ... upon presentation, if accompanied by a written statement that the charges are correct and have not been paid." Primary Industries does not dispute that it guaranteed Primary Coal's payments and that Primary Coal has not paid. It does not deny receipt of the demand notice in January 1992 nor does it challenge the substantive sufficiency of the notice. Instead, Primary Industries dismisses the demand notice on the ground that it was delivered *before,* and not *after,* Conrail's claim against Primary Coal was reduced to judgment in November 1994 by this court in *Consol. Rail Corp. v. Primary Indus. Corp.,* 868 F.Supp. 566 (S.D.N.Y.1994). However, the guarantee agreement does not require Conrail to reduce to judgment its claim against Primary Coal before delivering a demand notice to Primary Industries and taking action to enforce its rights under the guarantee agreement. Because Conrail has demonstrated that there are no material facts genuinely in dispute, and Primary Industries has not set forth specific facts showing that there is a genuine issue for trial, Conrail is entitled to summary judgment. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

■ Primary Industries' arguments to the contrary are meritless. Primary Industries argues that summary judgment is not appropriate because that there is a genuine issue of material fact as to the circumstances surrounding Primary Coal's default on its obligations to Conrail, and thus a question as to Primary Industries' obligations as guarantor: "What constitutes a default by the promisor ... must be established by scrutinizing the facts particular to each case...." *Defendant's Mem. in Opp.* at 2. However, Primary Industries does not identify any such factual issues regarding Primary Coal's default. There is no question that Primary Coal's payment is overdue. *See Consol. Rail Corp.,* 868 F.Supp. 566 (granting Conrail

summary judgment on its claim for freight charges against Primary Coal).

■ Nevertheless, Primary Industries' argument then continues that Conrail has not fulfilled the demand notice requirement because it did not send a notice *after* Primary Industries became obliged—i.e., after this court's November 1994 judgment establishing that Primary Coal owes in excess of $5 million to Conrail for unpaid freight charges. Primary Industries ignores the fact that these freight charges were outstanding since the end of 1991 and that Conrail has been trying to collect under the guarantee since almost immediately thereafter, as evidenced by its January 1992 demand notice. Primary Industries urges that any notice sent between January 1992 and November 1994 fails to satisfy the demand notice requirement of the guarantee agreement. Primary Industries suggests that this court should discard the guarantee altogether because Conrail has not given the requisite notice since the time when the obligation became "due" to Primary Coal before attempting to collect on the guarantee.

Primary Industries provides no convincing reason for ignoring the January 1992 demand notice. The fact that Conrail's claim against Primary Coal was reduced to judgment in November 1994 does not vitiate the demand notice previously given.

Primary Industries cites no case law which supports its position. Primary Industries relies on *Canterbury Realty and Equip. Corp. v. Poughkeepsie Sav. Bank,* 135 A.D.2d 102, 524 N.Y.S.2d 531 (1988), where summary judgment against guarantor was denied because genuine issues of material fact existed as to whether creditor had properly accelerated loans when guarantors only obligated themselves unconditionally to make payments on liabilities "when due." In that case, the creditor's right to accelerate the loans was conditional upon, *inter alia,* "an adverse change in [the borrower's] financial condition." *Id.,* 524 N.Y.S.2d at 533. *Canterbury Realty* is clearly distinguishable: The court denied summary judgment because the guarantor's obligation was contingent upon the underlying obligation, and

there was an issue of fact as to whether the underlying obligation was properly due. There being no dispute in the case at hand that the amount owed by Primary Coal is properly due, the *Canterbury Realty* opinion fails to undermine Conrail's argument in favor of summary judgment.

Primary Industries cites *Pergament v. Herrick Credit Corp.*, 200 N.Y.S.2d 535 (Sup. Ct.1960), and *Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (1993), in support of the proposition that notification is a condition precedent to enforcement of the guarantee. Failure of this condition, Primary Industries claims, will release the guarantor from liability. In *Pergament,* the court denied summary judgment to creditors because, *inter alia,* the guarantee provision required the creditor to notify the guarantor of the borrower's default on payments before accelerating the entire loan. Notice prior to acceleration—which triggered guarantor's obligation—was an essential precondition of the guarantee because, if the guarantor had been notified that payments were delinquent or overdue, the guarantor could have prevented triggering its obligation by making payments for the borrower. The guarantee agreement read as follows:

> [B]efore we shall have the right to proceed against you with respect to your endorsement of the notes . . . we shall be required to notify you in writing . . . of any default and you shall have a period of five days within which to cure such default, and if you shall make such defaulted payment within said period of five days, then the acceleration provision contained in any instrument which has been executed in connection with such transaction shall not operate as against you.

*Pergament,* 200 N.Y.S.2d at 538. In this case, Primary Industries *did* have notice of

Primary Coal's obligation. Furthermore, even if Conrail had delivered another demand notice after the November 1994 judgment of this court, unlike the guarantor in *Pergament,* there is nothing that Primary Industries could have done to avoid its already triggered obligation as guarantor. In short, the facts of *Pergament* are quite different from the circumstances of this case.[2]

As for *Phoenix Acquisition Corp., supra,* Primary Industries seems to be relying on the fact that the trial court below had decided the issue of whether the parties intended notice to be a condition precedent, implying that this court should allow the issue of intent to go to trial. Primary Industries' reliance is misplaced. Even conceding for the sake of argument that the parties intended that notice be a condition precedent, there is no dispute that Conrail did in fact deliver a demand notice in January 1992. Delivery of this demand letter renders moot any factual issue as to whether the parties intended notice to be a precondition.

■ Primary Industries *knew* about the unpaid and outstanding balance at the very latest by January 1992. Requiring Conrail to renew its notice after the November 1994 judgment serves no legitimate purpose. Primary Industries also takes issue with Conrail's purported lack of effort in collecting directly from Primary Coal. However, nothing in the guarantee requires Conrail to wait in line with other creditors to collect from Primary Coal. The desire to avoid having to do so is precisely the reason why guarantees are sought in the first place. Conrail had the foresight to obtain this guarantee from Primary Industries, and Primary Industries may not demand that Conrail first exhaust all its legal remedies against Primary Coal.[3]

---

**2.** There is language in *Pergament* to the effect that whether or not notice is given in a timely manner is an issue of fact. Primary Industries does not contend that notice was not given within a reasonable time. Rather, Primary Industries argues that no notice was given at all. Primary Industries does not assert that notice was given "too late" for Primary Industries to do anything to avoid Primary Coal's default. In fact, however, Conrail notified Primary Industries almost immediately upon Primary Coal's default.

**3.** Primary Industries alludes to Conrail's reluctance to ask for payment for fear of receiving "what Primary Coal has to offer" (presumably something less than what is owed). Conrail is not required to negotiate a settlement with Primary Coal.

Finally, Primary Industries contends cursorily that "Conrail is obliged—pursuant to indisputable language contained in the Transportation Contracts that were before the Court in Conrail's motion for summary judgment as to Primary Coal—to give a refund of approximately $1,400,000 of the amount owing to Conrail." *Defendant's Mem. in Opp.* at 5. This effort to create a factual issue as to the amount owed by Primary Coal is of no avail. Primary Industries may not have this court revisit the issue of Primary Coal's liability to Conrail under the 1991 freight contracts, already established by this court in *Consol. Rail Corp. v. Primary Indus. Corp.*, 868 F.Supp. 566 (S.D.N.Y. 1994). Furthermore, even if Primary Industries were correct that $1,400,000 should be deducted from Primary Coal's obligation to Conrail, Primary Coal would still owe in excess of $1,000,000, thus having no effect whatsoever on Primary Industries' obligation under the guarantee. Only disputes over facts that might affect the outcome of the suit under the governing law will properly exclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

There can be no dispute that Primary Coal defaulted under its payment obligations to Conrail. Primary Industries received a demand notice in January 1992 from Conrail as per the guarantee agreement. Primary Industries is therefore bound pursuant to its obligation under the guarantee. Accordingly, Conrail is entitled to summary judgment against Primary Industries in the amount of $1,000,000.

*Conclusion*

For the foregoing reasons, Conrail's motion for summary judgment on its claim against Primary Industries is granted. We direct Conrail to submit a judgment order on 10 days' notice.

SO ORDERED.