12-1887-cv
Donjon Marine Co. v. Water Quality Ins. Syndicate

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of April, two thousand thirteen.

PRESENT: RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
*Circuit Judges,*
JED S. RAKOFF,
*District Judge.**

-------------------------------------------------------------------

DONJON MARINE CO., INC.,

*Plaintiff-Appellee*,

v.                                                          No. 12-1887-cv

WATER QUALITY INSURANCE SYNDICATE,

*Defendant-Appellant.*

-------------------------------------------------------------------

---

* The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLANT:    ELIZABETH A. MCCOY (James E. Forde, *on the brief*), Hill, Betts & Nash LLP, New York, NY.

FOR APPELLEE:    WILLIAM M. FENNELL (Terry L. Stoltz, *on the brief*), Nicoletti Hornig & Sweeney, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED in part, and VACATED and REMANDED in part.

Defendant-appellant Water Quality Insurance Syndicate ("WQIS") appeals from an April 20, 2012 judgment in favor of plaintiff-appellee Donjon Marine Co., Inc., ("Donjon") in the amount of $236,272.38.   Among other things, the District Court concluded that WQIS served as a guarantor to Abhe & Svoboda, Inc. ("A&S") and as such was required to pay the full amount invoiced by Donjon pursuant to its Wreck Removal and Marine Services Agreement with A&S (the "Salvage Agreement").   We assume the parties' familiarity with the facts and record of the prior proceedings, which we reference only as necessary to explain our decision.

I.    WQIS's Motion to Stay Pending Arbitration

WQIS argues that the District Court erred by failing to grant its motion to stay this action pending arbitration between Donjon and A&S.   It asserted to the District Court that the arbitration would resolve at least one issue that it described as central to the federal litigation, namely, whether Donjon failed to complete the work it contracted to perform pursuant to the Salvage Agreement, which included recovering deck equipment that fell within the general footprint of A&S's sunken barge.

We review a district court's decision to deny a stay pending arbitration for abuse of discretion.   See Nederlandse Erts-Tankermaatschappij, N.V. v. Isbrandtsen Co., 362 F.2d

2

205, 206 (2d Cir. 1966). Under its inherent power to manage its docket, a district court can stay a case pending arbitration when the arbitration may determine issues involved in the case, even when the parties to the stayed action are not the parties involved in the arbitration. Nederlandse Erts-Tankermaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964). The party seeking the stay has the "heavy burden," Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991), of establishing "that [it has] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship," Isbrandtsen, 339 F.2d at 442.

WQIS failed to meet this burden because it did not show that the arbitration would likely conclude within a reasonable time. Although WQIS informed the District Court that arbitration hearings would begin the week after the hearing on the parties' dispositive motions, it did not establish when the parties could expect a result. Events since then only confirm that the District Court correctly refused to issue a stay. The parties informed us in advance of oral argument that, nearly one year after the motion was made, the arbitrators have yet to render a decision; indeed, they received supplemental submissions as recently as February 26, 2013. Without some better assurance at the time that A&S moved for a stay that the arbitration could be expected to end expeditiously – at least before the federal litigation, including appeal, might conclude – the District Court did not abuse its discretion by declining to stay this action.

II.    Donjon's Motion for Summary Judgment

WQIS's principal argument is that the District Court erred by granting Donjon's motion for summary judgment. First, WQIS contends that Donjon was not owed the lump sum payment Donjon seeks because it failed to complete its obligations under the Salvage Agreement. Second, it claims that Donjon overbilled for pollution prevention work. For

3

the following reasons, we reject the first argument but remand to the District Court for reconsideration of the pollution prevention services agreement.

A.  The Salvage Agreement

"We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Kuebel v. Black & Decker Inc., 643 F.3d 352, 358 (2d Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

There can be no genuine dispute that WQIS guaranteed A&S's debts to Donjon for salvage work completed under the Salvage Agreement. "For a plaintiff to establish a prima facie case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant." Chem. Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994). WQIS challenges the first element, arguing that Donjon was not owed a debt from A&S under the Salvage Agreement because Donjon failed to recover three pieces of equipment – a generator, a reclaimer, and a hopper – that fell within the general footprint of the sunken barge. The parties agree that, under the contract, payment is due upon "completion" of the work. They disagree about what Donjon needed to do before the work would be deemed "completed." Both parties rely on Clause 18 of the Salvage Agreement, which provides:

> The work will be deemed completed once the vessel and all attached equipment is removed from the site. Donjon also agrees to recover any deck equipment that may have fallen off the barge during the casualty as long as it is within the general footprint of the vessel[']s present sunken location.

WQIS argues that this clause – particularly in conjunction with the agreement's definition of "vessel," which includes cargo "contained therein or thereon" – required Donjon to

4

recover deck equipment that fell within the general footprint of the sunken barge before it would be entitled to payment. Donjon responds that Clause 18 entitled Donjon to payment when it refloated and redelivered the barge; it urges that the second sentence of Clause 18 is an additional promise that need not be fulfilled to trigger A&S's payment obligation.

Even if we accepted WQIS's interpretation of Clause 18, we would affirm the District Court's decision relating to the Salvage Agreement. WQIS provided no admissible evidence that Donjon failed to recover equipment in the general footprint of the sunken vessel, while Donjon supplied affirmative evidence that it had done so. Donjon submitted an affidavit from its Salvage Master, William E. Kratz, III, stating that he dove on site and "confirmed that no equipment remained in the general footprint of the sunken barge." Kratz's affidavit was supported on the record by an email from another diver, Eva Longobardi, who wrote that she participated in the removal of equipment that had been trapped underneath the barge, and that the additional items and equipment that remained fell outside of the vessel's general footprint. Having failed to provide evidence in its favor, WQIS has also failed to raise a genuine dispute as to the fact of Donjon's completion of the salvage work, and Donjon was entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

WQIS alternatively maintains that its guarantee was not an unconditional guarantee of payment, which permits a creditor to proceed directly against a guarantor if the debtor fails to pay, but was instead a conditional guarantee of collection, which requires the guarantor to pay if and only if the debt cannot be collected from the debtor via legal proceedings. See Thomas H. Lee Equity Fund V, L.P. v. Bennett ("THL"), No. 05 Civ. 9608(GEL), 2007 WL 950133, at *3 (S.D.N.Y. Mar. 28, 2007) (Lynch, J.). We reject this

5

argument. "The language of the agreement . . . should guide the determination of which kind of guarantee is involved." Id. Donjon requested from A&S's guarantors, WQIS and Travelers, "agree[ment] to pay their portion of the total invoice in accordance with the terms of the contract executed between Donjon and [A&S]." Travelers confirmed that it would "be responsible for 50% of the Don Jon contract," and WQIS "confirm[ed] [its] agreement to payment of the Don Jon contract . . . ." WQIS's agreement "to payment" contained no conditions, and WQIS did not explicitly agree "to pay only after all attempts to obtain payment from the debtor have failed." Gen. Phoenix Corp. v. Cabot, 300 N.Y. 87, 92 (1949). There is no basis for us to conclude, as WQIS urges, that by agreeing to pay "in accordance with the terms of the" Salvage Agreement, WQIS implicitly conditioned payment on Donjon's successful arbitration against A&S. By its terms, the Salvage Agreement does not require arbitration before payment; it requires payment upon completion of Donjon's work. Indeed, the express terms of Part II, Section 12 of the Salvage Agreement confirm Donjon's understanding and expectation that the security A&S provided under the Salvage Agreement, through WQIS, would be "irrevocable and unconditional," and thus confirm that WQIS gave a guarantee of payment, not of collection. The District Court did not err in so concluding.

      B.   The Pollution Prevention Services Agreement

      WQIS contends that although Donjon billed $130,900 for 34 hours of pollution prevention services, WQIS satisfied its obligation to Donjon by paying $100,000. First, it argues that a significant portion of the amounts invoiced was for time spent not on pollution control services but on salvage-related services, which are covered by the lump sum payment under the Salvage Agreement. Second, it claims that Donjon Executive Vice President John Witte agreed to accept $100,000 as full payment for the pollution prevention services. Third, it argues that by agreeing to pay for pollution prevention

6

services "promptly on receipt of a recommended invoice," it implicitly conditioned payment on A&S's authorization, which A&S withheld.

We vacate the District Court's judgment with regard to the pollution prevention services agreement. At the hearing on Donjon's summary judgment motion, the District Court appears to have conflated the pollution prevention services agreement with WQIS's guarantee of the Salvage Agreement, stating that the emails comprising the agreement were "the equivalent of a guarantee that was in existence before," and justifying its judgment against WQIS by stating that, "[t]he nature of the guarantee is to shift the risk from the contract party to the guarantor." However, it is far from clear that the pollution prevention services agreement was a guarantee under the same terms as the guarantee related to the Salvage Agreement. WQIS argues that its promise to pay was a guarantee conditioned on A&S's recommendation or authorization to pay. Because Donjon agreed to accept payment upon WQIS's receipt of a "recommended invoice," we cannot say the pollution prevention services agreement had "a definite and precise meaning" favoring Donjon's position, "concerning which there is no reasonable basis for a difference of opinion." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Further, at oral argument, Donjon represented that A&S argued to the arbitration panel that the pollution prevention services agreement was not a guarantee but rather an independent promise that WQIS would pay for the pollution prevention services. This reading is also plausible, as WQIS initially stated unequivocally that it "agreed to pick up the pollution related costs," and A&S did not explicitly agree to pay for these services. In light of these various plausible readings of the agreement, some of which favor WQIS, we cannot construe that agreement in Donjon's favor as a matter of law, and summary judgment was inappropriate. We therefore vacate the District Court's decision granting summary judgment for Donjon with regard to the pollution prevention services agreement.

According to the parties, the arbitration panel is currently considering whether A&S has an obligation to pay the amount invoiced for pollution prevention services, and under the terms of the Salvage Agreement, its decision will bind A&S.  We are aware that the arbitration panel's decision may also resolve or clarify the issues presented here.  The matter was fully briefed and submitted on February 26, 2013, and the arbitrators may issue a decision as early as the end of June 2013.  See Soc'y of Mar. Arbs., Inc., Maritime Arbitration Rules § 28, http://www.smany.org/sma/about6-1.html.  On remand, the District Court is of course free to decide to hold this matter in abeyance until the arbitrators have issued a decision.  If it does so, it can thereafter invite renewed motions for summary judgment from the parties in light of the arbitration decision.

We have considered all of the parties' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of the District Court is AFFIRMED with regard to the Salvage Agreement and VACATED and REMANDED with regard to the pollution prevention services agreement.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8