**In the Matter of FEDERATED DEPART-MENT STORES, INC., Allied Stores Corporation, et al., Debtors.**

**Bankruptcy No. 1–90–00130.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 27, 1992.

David Epstein, Boston, Mass., Bernard Nash, Edward Modell, Dickstein, Shapiro & Morin, Washington, D.C., for petitioner.

Kim Lewis, Frost & Jacobs, Cincinnati, Ohio, Mary Ann Gall, Jones, Day, Reavis & Pogue, Columbus, Ohio, for respondent.

ORDER RE: MOTION TO RECONSIDER ORDERS OF JANUARY 14, 1991 AND FEBRUARY 26, 1991

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before this Court on the Motion To Reconsider Orders of January 14, 1991 and February 26, 1991 filed by the States of Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Maine, Missouri, Montana, New Jersey, North Carolina, North Dakota, Utah and Washington and the Commonwealth of Pennsylvania (collectively, "States") and Memorandum in Support (Doc. 8750), the Response of Reorganized Debtors (Doc. 8955) and Affidavits in Support (Doc. 9086) and the States' Reply (Doc. 9034). After review of these documents and other relevant pleadings, the Court makes the following findings of fact and conclusions of law.

## BACKGROUND

In their Schedule of Assets and Liabilities which were filed on May 4, 1990, the Debtors listed as "contingent" the claims of approximately 6000 former shareholders of Allied Stores Corporation ("Allied") and Federated Department Stores, Inc. ("Federated") who had not tendered their shares in connection with the Allied/Campeau merger in 1986 and the Federated/Campeau merger in 1988. Because the claims were denominated by the Debtors as being contingent, these claimants were required to file proofs of claim by August 1, 1990 ("Bar Date") to preserve their claims. A certain portion of these claimants ("Untendered Shareholders") holding certificates valued at an estimated $19.3 million ("Untendered Shares") did not file proofs of claim by the Bar Date. On November 26, 1990, the Debtors filed their Motion For Order Disallowing Certain Claims of Holders of Untendered Shares of Stock Who Failed To File Proofs of Claim (Doc. 2286) ("November 26, 1990 Motion"). This Court, after a hearing on January 10, 1991, granted the Debtors' November 26, 1990 Motion, excepting out certain Untendered Shareholders who had responded to same (Doc. 3186) ("January 14, 1991 Order"). On February 15, 1991, the Court heard argument on the November 26, 1990 motion as it related to these responding claimants and thereafter, entered its second order granting the Debtors' November 26, 1990 Motion (Doc. 3618) ("February 26, 1991 Order"). It is the January 14, 1991 Order and the February 26, 1991 Order (collectively, "Orders") which the States have asked this Court to reconsider.

On March 13, 1991, the Debtors filed their Objection to State Proofs of Claim Under State Unclaimed Property Laws (Doc. 3771) ("Objection"). Due to the broad nature of the States' overall claim, the States claimed an interest in the Untendered Shares as well as many other claims. A hearing on the Objection was held on October 24, 1991. At this Court's request, post hearing briefs were filed by the States and the Debtors (Docs. 6497 and 6501). On January 8, 1992, this Court entered its Order Granting Debtors' Objection To State Proofs of Claim Under State Abandoned Property Laws (Doc. 7369) ("Escheat Order"), wherein we held that the States' abandoned property laws, upon which the States' claims were based, were preempted by federal bankruptcy law. The Escheat Order also stated that 11 U.S.C. § 502(j) and Bankruptcy Rule 3008 set forth the appropriate procedural vehicle for the reconsideration of an order. Two days later, on January 10, 1992, the Debtors' Plan of Reorganization was confirmed (Doc. 7482). The States filed an appeal of the Escheat Order on February 7, 1992 (Doc. 7891). The Debtors made their first distribution under the Plan on February 14, 1992 ("Effective Date"). The States filed the within Motion For Reconsideration on April 29, 1992.

The States have moved for reconsideration of the two Orders on the ground that, (1) the claims were not contingent and should not have been scheduled as contingent, (2) the States should have been, but were not, sent notice of the Debtors' motion for disallowance, and, (3) the Debtors did not provide adequate notice of their motion to the individual claimants directly affected by the motion and subsequent Orders. While we find that the last two grounds lack merit, we find that the first ground warrants serious consideration.

## I.

Of course, the mere scheduling of a claim by a debtor as contingent does not make it so. The Court has the power to investigate and determine the contingency of the liability. *In re Wilson,* 9 B.R. 723, 725 (Bankr.E.D.N.Y.1981).

Pursuant to 11 U.S.C. § 502(j):

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

We find that the Debtors' erroneous scheduling of the Untendered Shares as contingent claims would satisfy the "for cause" standard for reconsidering disallowed claims.

## II.

The claims of the Untendered Shareholders were created under the Amended and Restated Agreement and Plan of Merger between Allied and Campeau in 1986, which provided in pertinent part:

> ... at the Effective Time, each share of the Common Stock, without par value (the "Shares") of the Company issued and outstanding immediately prior to the Effective Time ... shall, by virtue of the Merger and without any action on the part of the holder thereof, be converted into the right to receive $69 in cash, without interest (the "Cash Consideration").

The Certificate of Merger between Federated and Campeau filed in 1988 provides in pertinent part:

> ... each issued and outstanding share of Common Stock par value $1.25 per share (the "Common Stock") of Federated shall be converted into the right to receive from the Surviving Corporation $73.50 in cash, without interest.

Although the term "contingent" is not defined in the Bankruptcy Code or Rules, the term has a generally accepted meaning as being an event dependent upon or conditioned by something else. In the bankruptcy context, it has been established by caselaw that contingent claims are generally either tort claims, *e.g., In re Albano*, 55 B.R. 363, 369 (Bankr.N.D.Ill.1985) (liability founded in contract is not contingent while liability founded in tort is contingent), or guarantees and other co-debtor obligations. *E.g., In re Ford*, 125 B.R. 735, 737 (Bankr. E.D.Tex.1991) (claim against guarantor is classic example of contingent claim). The general premise is that such claims are contingent because "the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor." *In re All Media Properties, Inc.*, 5 B.R. 126, 132–33 (Bankr.S.D.Tex.1980).

The Debtors argue that the contingency here is the requirement that the shares be tendered prior to payment and that absent proper tender, the Untendered Shareholders have no right to payment for their certificates. This argument fails for several reasons.

First, by the language of the merger documents, it is clear that there is no "extrinsic event" which will trigger the *liability* of the Debtors. The Debtors owe to the Untendered Shareholders the amount of $69 for each Allied share and $73.50 for each Federated share. Period.

Second, Debtors admit that the tender "contingency" was created in order to prevent fraud and avoid the potential for duplicate payments (Response at p. 14). In the first instance, the Debtor does not want to pay the wrong person. In the second instance, the Debtor does not want to pay somebody twice. But in both instances, the Debtor has to pay *somebody*. The alleged "contingency" is not real.

Third, in 1988, Federated's exchange agent prepared and filed with the IRS the Forms 1099–B for all shareholders of Federated stock, including those shareholders who had not yet submitted their stock for payment, and sent to the IRS as backup withholding 20% of the conversion price of the stock owned by shareholders for whom the exchange agent lacked an executed exemption form. In other words, for tax purposes, the Debtors did not treat the Untendered Shares as being contingent.

The claims of the Untendered Shareholders should not have been scheduled as contingent. By doing so, the Debtors improperly forced thousands of claimants to file proofs of claim that otherwise would have been unnecessary. As aptly stated by the States, it is not the purpose of the Bankruptcy Code to create imaginary hurdles to block small, unsophisticated creditors from participating in bankruptcy distributions. And while it certainly must be exasperating for the Debtors to have thousands of relatively small claims left hanging since 1986 and 1988 because these claimants, for whatever reason, failed to come forward after the mergers to claim their Cash Equivalent values, such does not give the Debtors the right to transform these non-contingent claims into contingent claims, especially when such transformation was of benefit to the Debtors.

The Debtors argue that the characterization of the scheduled debts should have been raised prior to confirmation. However, the States *did* raise the issue prior to confirmation in response to the Debtors' Objection and at the October 24, 1991 hearing. This Court issued its decision on the Objection two days prior to the confirmation of the Plan. Furthermore, § 502(j) and Rule 3008 set no time limit for the filing of a motion for reconsideration of the allowance or disallowance of a claim. In fact, such a motion may be filed at any time, even after a case has been closed. Bankruptcy Rule 3008, Advisory Committee Note. We find that the within Motion was timely filed.

The Debtors argue that a ruling in favor of the States will adversely affect all other unsecured creditors since the Untendered Shareholders will be added to that class of creditors and will receive pro rata distributions from the pool of new common stock, thus diluting the distribution received by each creditor. The Debtors believe this result to be improper since some distributions of stock have already been made and since the other unsecured creditors relied on a balance of zero for the Untendered Shareholders when voting on the Plan. However, the Debtors' Disclosure Statement expressly disclaimed any guarantee as to the percentage of recovery for any class of allowed claims. Likewise, the Debtors' confirmed Plan acknowledges and provides for allowances and disallowances of claims post-confirmation. Indeed, in a case of this magnitude, it would be folly to hope that all claims would be resolved prior to confirmation. Furthermore, § 502(j) specifically addresses this situation:

> Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.

The States do not seek to reopen the voting of the Debtors' confirmed plan, but only to assure that legitimate creditors are included therein for purposes of distribution. *E.g.*, *In re Spring Garden Foliage, Inc.*, 17 B.R. 882 (Bankr.M.D.Fla.1982) (§ 502(j) permits reconsideration of allowed claims for purposes of determination of creditor's right to share in distribution and not for purpose of voting after plan is confirmed.)

Debtors argue that motions for reconsideration outside of the ten day appeal period should be treated as motions for relief from judgment under Bankruptcy Rule 9024, which are held to the stringent standards of Rule 60 of the Federal Rules of Civil Procedure. This argument fails for two reasons. First, the States were not a party to the January 14, 1991 Order and the February 26, 1991 Order which are the subject of the within Motion for Reconsideration.[1] Second, Fed.R.Civ.P. 60 can be satisfied in several ways including a showing of misrepresentation or other misconduct of an adverse party, as well as any other reason justifying relief from the operation of judgment. We find that the improper characterization of the Untendered Shareholders by the Debtors allows the States to carry their burden under either section of Fed.R.Civ.P. 60.

■ Finally, Debtors argue that the States have no standing to bring the Motion for Reconsideration because they are not parties in interest to the Untendered Shares. Bankruptcy Rule 3008. The States claim an interest in the Untendered Shares by virtue of their various abandoned property laws. In its Escheat order, albeit subject to appeal, this Court previously ruled that the States' abandoned

---

1. We note that despite the Debtors' assertions to the contrary, the issue of the propriety of the scheduling of these claims as contingent claims was not an issue before this Court at either the January 10, 1991 hearing or the February 15, 1991 hearing.

property laws were preempted by the federal bankruptcy laws because the Bankruptcy Code has in place an elaborate system for the distribution of the debtor's property, which serves to protect both creditors and debtors and because the application of state abandoned property laws would conflict with and serve to confuse the bankruptcy distribution process. We find that the States do have standing to bring the within Motion. In keeping with our previous ruling in the Escheat Order, however, we hold that the States shall not succeed to the rights of the Untendered Shareholders to the Untendered Shares.

### III.

Although the States have brought this matter to the Court's attention, it is the Untendered Shareholders who have been damaged by the Debtors incorrect scheduling of the claims.

Accordingly, the States' Motion for Reconsideration is hereby GRANTED. While this Court will not require the Debtors to make an immediate distribution to the Untendered Shareholders at this time, it is hereby ORDERED that the Debtors shall make the appropriate distribution to any and all Untendered Shareholders, if and when they surface with their Untendered Shares.[2] It is further ORDERED that the Debtors shall notice all Untendered Shareholders that the January 14, 1991 Order and the February 26, 1991 Order have been vacated and that the claims of the Untendered Shareholders have not been disallowed.

IT IS SO ORDERED.

---

**2.** or appropriate affidavit or bond, if so required.