**Robert E. COUHIG, Jr., et al.**

**v.**

**James L. BROWN, Secretary of State, State of Louisiana.**

**Civ. A. No. 82–1136.**

United States District Court, E. D. Louisiana.

May 13, 1982.

Robert D. Bjork, Jr., New Orleans, La., for plaintiffs, Robert E. Couhig, Jr., et al.

Kenneth C. Dejean, Baton Rouge, La., for defendant, James L. Brown, Secretary of State, State of La.

ROBERT F. COLLINS, District Judge.

The above captioned matter came before the Court for a hearing on April 14, 1982 at 9:00 a. m., on motion of the defendant, James H. Brown, Secretary of State, State of Louisiana, to dismiss on the grounds that plaintiffs' claim is premature and fails to state a claim upon which relief may be granted.

WHEREFORE, after careful consideration of the arguments of counsel, the relevant facts, the applicable law, and all of the issues in the submitted memoranda, the Court will and hereby does GRANT the defendant's motion to dismiss on the grounds that plaintiffs' claim is premature and not ripe for adjudication. Accordingly, the Court will enter judgment in favor of the defendant and against the plaintiffs.

## REASONS

This lawsuit was instituted by certain registered voters in the State of Louisiana seeking a preliminary and permanent injunction restraining defendant, James L. Brown, Secretary of State, State of Louisiana, from conducting the 1982 Congressional Elections under any other district lines than those used in the 1980 election. One of the plaintiffs, Robert E. Couhig, Jr., was a candidate for United States Congress, Second Congressional District of Louisiana, in 1980 and he has decided to run for Congress again in 1982. He contends that the uncertainty surrounding the district plan for the 1982 election has adversely affected his ability to campaign for office. The other plaintiffs in this action are registered voters who were residents of the Second Congressional District for the 1980 election and who would reside in some other district if the new legislative apportionment plan were used during the 1982 election. These plaintiffs maintain that their right to vote has been effectively denied so long as the confusion over the district plan persists.

### Factual Background

After the national census of 1980, the Louisiana Legislature was required by both federal and state law to draft an apportionment plan for the eight Louisiana congressional districts. In November of 1981, the Legislature enacted and the Governor signed Act 20 of that session, LSA–R.S. 18:1276.1, which established a new apportionment plan for the eight congressional districts. Since the Act 20 reapportionment plan constitutes a "standard, practice, or procedure" within the meaning of § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, the State is obligated to submit the plan for preclearance before the plan can take effect. *McDaniel v. Sanchez*, 452 U.S. 130, 101 S.Ct. 2224, 2229–30, 68 L.Ed.2d 724 (1981). On December 14, 1981, in accordance with the preclearance procedures of the Voting Rights Act, the State of Louisiana submitted Act 20 for review by the Justice Department of the United States of America. Under the Voting Rights Act, the plan will become effective if the Justice Department does not interpose an objection within sixty (60) days of submission. In the present case, the Justice Department notified the State of Louisiana on February 16, 1982, the last possible day under the Voting Rights Act, of an objection to the submission for lack of sufficient information. The State is required to compile additional information for consideration by the Justice Department, and upon its submission, the Department will have an additional sixty (60) days to act. 28 C.F.R. § 51.24.

The factual circumstances before the Court are further complicated by the existence of a separate action, *Barbara Major et al. v. David Treen et al.*, No. 82–1192 (E.D. La.1982), seeking declaratory and injunctive relief from any election being conducted pursuant to the plans of apportionment in effect prior to November, 1981, on the grounds that such an election would violate the one-person, one-vote principles of the fourteenth amendment. In effect, the *Major* litigants challenge the constitutionality of the district plan which the plaintiffs in the *Couhig* action seek to impose for the upcoming election. Additionally, the *Major* action challenges the constitutionality of the newly enacted apportionment plan, though counsel has represented to the Court that he will await the result of preclearance before pursuing this aspect of the *Major* litigation.[1]

### Justiciability and Ripeness

Plaintiffs have brought this action alleging that the continuing delay in effecting apportionment plan for the congressional districts denies voters and candidates rights secured by the first and fourteenth amendments to the United States Constitution.[2]

---

1. The *Major* action is also before this Court on plaintiffs' motion to consolidate. The Court's ruling on the motion to consolidate will be forthcoming in a separate minute entry.

2. No claim has been brought pursuant to the Voting Rights Act. Indeed, the State has made every effort to comply with the preclearance requirements, and if successful in obtaining preclearance, no further remedy is provided by

The defendant initially asserts that plaintiffs' claim is premature and not ripe for adjudication.

The question of ripeness is merely a derivative of the broader concept of justiciability; *Flast v. Cohen*, 392 U.S. 83, 95–97, 88 S.Ct. 1942, 1949–1951, 20 L.Ed.2d 947 (1968); *El Paso Electric Co. v. Federal Energy Regulatory Commission*, 667 F.2d 462, 466 (5th Cir. 1982).

> Adjudication may be refused on the ground that a case, otherwise appropriate for decision, lacks ripeness. Ripeness doctrine is drawn both from Article III limitations on judicial power and discretionary reasons of policy for refusing to exercise existing power. The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all. As questions of ripeness frequently occur in cases seeking declaratory relief, it is not surprising that one of the most recent ripeness formulas is a repetition of an early declaratory judgment test: [b]asically, the question in each case is whether ... there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3532, at 237–38 (1975) (footnote omitted). The fundamental premise of ripeness is that federal courts do not decide cases involving uncertain and contingent circumstances.

> A justiciable controversy is distinguished from a dispute merely hypothetical or abstract in nature. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, not an opinion advising what the law would be upon a hypothetical state of facts.
>
> This circuit has held that the district courts lack jurisdiction to express legal opinions based upon hypothetical or academic facts.

*Halder v. Standard Oil Company*, 642 F.2d 107, 109 (5th Cir. 1981) (citations omitted); see also Wright, Miller & Cooper, *supra*, § 3532, at 258.

To a large extent, ripeness merely reflects the Court's inherent discretion in granting equitable relief. *Martin Tractor Co. v. Federal Election Commission*, 627 F.2d 375, 379 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). The standards for ripeness are sometimes relaxed when, as in the present case, declaratory or injunctive measures are sought to protect first amendment freedoms. *Id.* at 380. Nevertheless, the mere fact that plaintiffs allege a first amendment "chilling effect and shiver in court does not thereby establish a case or controversy." *National Student Association v. Hershey*, 412 F.2d 1103, 1114 (D.C.Cir.1969). The first amendment jurisprudence usually arises in the context of a facial attack upon the constitutionality of statutes or regulations. *Martin Tractor Co. v. Federal Election Commission, supra* at 380–81. Since first amendment freedoms may be violated when the plaintiff does not speak or act as he would choose, a reasonable predictability of enforcement or threats of enforcement have sometimes been sufficient to ripen a claim. *National Student Association v. Hershey, supra* at 111. In this case, however, the plaintiffs do not challenge the constitutionality of any state statute. Instead, they protest the state's inaction in effecting a district plan for a future election. Consequently, the relaxed standard of ripeness in first amendment cases is not relevant in this instance because the basis for that rule, the chilling effect of the threatened enforcement of a statute, is not present in this case.

A recent Fifth Circuit opinion, *Halder v. Standard Oil Company, supra*, illustrates the applicability of the doctrine of ripeness. Halder entered into a five-year lease con-

the Voting Rights Act. Litigants may only then enjoin the enforcement of the apportionment plan in traditional suits attacking the constitu-

tionality of the plan. *Allen v. State Board of Elections*, 393 U.S. 544, 549–50, 89 S.Ct. 817, 823, 22 L.Ed.2d 1 (1969).

tract to operate a service station on land owned by Chevron, U.S.A. Near the end of the five-year term, the State of Georgia notified Chevron that the state intended to acquire the property under its power of eminent domain. Accordingly, Chevron notified Halder that the lease would be terminated upon expiration but Halder could continue to operate the station on a month-to-month basis. Halder brought suit under the Petroleum Marketing Practices Act of 1978, 15 U.S.C. § 2801 *et seq.*, seeking to enjoin the State of Georgia from paying compensation to Chevron for expropriating the land in question and a judgment in the amount of his fair share of compensation. *Id.* at 109. The district court dismissed the claim as premature. On appeal, the Fifth Circuit affirmed, stating in relevant part:

> Halder's complaint posits a hypothetical set of facts which might form a basis for relief. If Georgia takes parcel 45 under power of eminent domain, and if compensation received by Chevron includes compensation based upon loss of business opportunity or good will, and if Chevron does not fairly apportion that compensation between Chevron and Halder, then Halder would be entitled to file a civil action. However, "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d at 461.

*Id.* at 110.

Similarly, in the present case the Court is asked to speculate on the impact of events and circumstances which may never come to pass. The most significant factual allegations in the complaint consist of only a series of hypothetical situations, as illustrated by the following excerpt:

> Subsequent to the determination of the Justice Department, two possibilities will exist:
> A. If the Department approves the plan, it is a virtual certainty that some affect-

ed group of voters will file suit under the 1965 Voting Rights Act to challenge the constitutionality of the new districts in this Court.
> B. If the Justice Department rejects the proposed apportionment plan, it will be resubmitted to the State Legislature for resolution with certain time parameters. Under this possibility, two scenarios exist:
> (1) If the Legislature and Governor do not produce a new plan within the stipulated time, this Court will have jurisdiction over the matter.
> (2) If the Legislature and Governor produce a new plan, it must be resubmitted to the Justice Department for approval with another sixty day period of review. The submission of a new plan begins a new round of challenge possibilities.

(Plaintiffs' Complaint, Para. X.) Apparently, plaintiffs seek to have this Court chart the course for an election based upon the Court's analysis of the projected circumstances. The Court, however, is convinced that to engage in this form of legal forecasting could only lead to ill-advised adjudication. At the hearing on the matter, the Court asked counsel to resolve the possible conflict should this Court order the 1982 election be conducted under the present district plan while a three-judge panel finds the present district plan unconstitutional. Counsel for the plaintiffs stated that the Court should not speculate on the outcome of the constitutional challenge, adding that the Court could amend its injunction to conform with the judgment of the three-judge panel. This kind of speculation, however, would be inevitable in view of the contingent factual basis alleged by plaintiffs. Moreover, the possibility of the need to amend the Court's judgment in this case creates uncertainty and would only add to the confusion which plaintiffs allegedly seek to eradicate.

Even if under any of the hypothetical situations, the constitutional controversy remains, the Court would still need specific facts to put the issue in the proper perspective for adjudication. In *Communist Party*

*of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961), the Supreme Court emphasized this very point:

> It will not do to [say] that no difference in circumstances will effect a different constitutional result—that the principles relevant to a determination of the validity of these statutory provisions do not depend upon the variations in circumstances in which they are potentially applicable. For this analysis presupposes that we now understand what are the relevant constitutional principles, whereas the reason of postponing decision until a constitutional issue is more clearly focused by, and receives the impact from, occurrence in particular circumstances is precisely that those circumstances may reveal relevancies that abstract, prospective supposition may not see or adequately assess.

*Id.* at 78, 81 S.Ct. at 1401. Counsel have referred the Court to only one reported decision which involved substantially identical constitutional issues. In *Ajello v. Schaffer,* 349 F.Supp. 1168 (D.Conn.1972), plaintiffs sought to enjoin a state court order implementing an election apportionment plan and providing for a "telescoped" campaign timetable. *Ajello,* like the case at bar, addressed the question of whether the constitutional rights of voters and candidates were impermissibly impinged upon by the lack of time to campaign.[3] The Court in *Ajello* was able to adjudicate this issue because an apportionment plan had been put into effect and a specific timetable was set for the election. In the present case, neither an apportionment plan or a telescoped timetable has been implemented. Even the election date is uncertain at this time, due to the specter of protracted litigation concerning the apportionment plan. In *Ajello,* the amount of time a candidate would have to campaign was known, and, therefore, the Court was able to render a judgment in light of this fact. This Court could only speculate on whether a candidate will have sufficient time to campaign for the 1982 election. Therefore, the claim is not justiciable at this time and will not become ripe until an apportionment plan is effective and the campaign timetable is settled.

At the very least, the claim is not ripe while the State is effectively prohibited from implementing an apportionment plan by virtue of the procedures set forth in the Voting Rights Act. The Supreme Court has consistently held that a federal district court should not address the constitutionality of a legislative apportionment plan until, and unless, the plan is cleared pursuant to the provision of the Voting Rights Act. *McDaniel v. Sanchez, supra; Dougherty County, Georgia Board of Education v. White,* 439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978); *Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977); *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). The rationale underlying this principle was explained in *McDaniel v. Sanchez, supra,* at 2236–37 (footnote omitted).

> It is true, of course, that the federal interest may be protected by the Federal District Court presiding over voting rights litigation, but sound reasons support the Committee's view that the normal § 5 preclearance procedures should nevertheless be followed in cases such as this. The procedures contemplated by the statute reflect a congressional choice in favor of specialized review—either by the Attorney General of the United States or by the United States District Court for the District of Columbia. Because a large number of voting changes must necessarily undergo the preclearance process, centralized review enhances the likelihood that recurring problems will be resolved in a consistent and expeditious way. Moreover, if covered jurisdictions could avoid the normal pre-

---

**3.** Plaintiffs have attempted to distinguish *Ajello* on the grounds that it was a fourteenth amendment case, whereas the plaintiffs' cause of action relies primarily on a violation of the first amendment. It is clear, however, that this first amendment claim was also raised in *Ajello. Ajello v. Schaffer,* 349 F.2d 1168, 1172 (D.Conn.1972).

clearance procedure by awaiting litigation challenging a refusal to redistrict after a census is completed, the statute might have the unintended effect of actually encouraging delay in making obviously needed changes in district boundaries. The federal interest in evenhanded review of all changes in covered jurisdictions is furthered by the application of the statute in cases such as this.

Similarly, the policies of centralized review and avoiding protracted litigation are applicable in this case. Though plaintiffs do not pretend to challenge the constitutionality of any apportionment plan, the relief sought in their lawsuit—to prevent an apportionment plan from taking effect for purposes of an upcoming election—is largely the same as a constitutional attack upon the plan. To declare the new plan ineffective for the 1982 congressional election has the same effect as declaring the new plan unconstitutional for purposes of this election. In effect, the orderly process of review set forth in the Voting Rights Act would be emasculated under the guise of a nebulous first amendment chill. Certainly, the plaintiffs' rights are no more sacred than the rights of litigants who would seek to challenge the constitutionality of the new legislative apportionment plan but who must await the results of the Voting Rights preclearance procedure. For the above reasons, the Court is convinced that judicial intervention would be inappropriate at this time.

### Conclusion

The Court finds that the above captioned matter is premature and not ripe for adjudication. WHEREFORE, the Court will and hereby does GRANT defendant's motion to dismiss and will forthwith enter an appropriate judgment.